```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

THOMAS JOHNSON,                   *

     Plaintiff,                   *

vs.                               *
                                        CASE NO. 4:19-CV-119 (CDL)
COLUMBUS CONSOLIDATED             *
GOVERNMENT, MUSCOGEE COUNTY
SHERIFF'S OFFICE, SHERIFF DONNA   *
TOMPKINS, and JOHN KIKER,
                                  *
     Defendants.
                                  *
```

O R D E R

Thomas Johnson alleges that the Columbus Consolidated Government ("CCG"), the Muscogee County Sheriff's Office, Sheriff Donna Tompkins, in her official and individual capacity, and John Kiker, in his official and individual capacity, violated Johnson's constitutional rights while he was detained at the Muscogee County Jail.  He brings this action pursuant to 42 U.S.C. § 1983.[1]

---

[1] Johnson also brings claims against "John Does" who are "unidentified correctional officers . . . employed by the Muscogee County Sheriff's Office." Compl. ¶ 9, ECF No. 1. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam) (affirming district court's dismissal of claims against "John Doe" defendant where plaintiff described the defendant as a guard at a correctional facility).  There is a limited exception to this rule when a plaintiff provides a very specific description of the defendant.  *Id.*  Here, Johnson has failed to meet this exception and any claims against these unidentified officers are dismissed.

Defendants move to dismiss all claims except for those against Kiker in his individual capacity. Johnson did not respond to Defendants' motion. For the following reasons, Defendants' motion to dismiss (ECF No. 12) is granted.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

On July 28, 2017, Kiker, a correctional officer at the Muscogee County Jail, attacked and injured Johnson after a

disagreement at the jail cafeteria.[2] Compl. ¶ 11. Johnson attempted to get a tray of food, Kiker refused to allow him to do so, and Johnson informed Kiker that he was going to leave the cafeteria to make a record of the dispute. *Id.* As Johnson was leaving, Kiker grabbed Johnson around the neck, jabbed him in the nose, and threw himself onto Johnson's right leg and ankle. *Id.* Johnson was taken to the jail's medical ward where his leg and ankle were put into splints and he received some Tylenol. *Id.* ¶ 14. On August 1, Johnson was taken to a medical clinic where he was informed that he had suffered two broken bones and would need surgery and extensive physical therapy. *Id.* ¶ 15. On August 3, Johnson underwent surgery and was prescribed Hydrocodone for the pain. *Id.* ¶ 16. After returning to the jail, however, he was provided with Tylenol, not the prescribed Hydrocodone. *Id.*

Around August 12, Johnson became concerned that his surgery wounds were infected. *Id.* ¶ 18. He complained about the infection but was not provided medical assistance. *Id.* On August 31, the examining physician at the jail determined that Johnson had a staphylococcus infection. *Id.* ¶ 19. Johnson alleges that the attack and subsequent treatment at the jail resulted in multiple severe injuries. *Id.* ¶ 20.

---

[2] Johnson's complaint does not clarify whether he was a pretrial detainee or a convicted prisoner.

DISCUSSION

## I. § 1983 Claims Against Tompkins and Kiker

### A. Official Capacity Claims

Johnson's § 1983 claims against Tompkins and Kiker in their official capacities are considered claims against the office of the Sheriff. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Defendants argue that they are entitled to Eleventh Amendment immunity, which protects "an official when he acts as an 'arm of the State.'" *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016) (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)). Courts in the Eleventh Circuit consider the factors outlined in *Manders* when determining whether an official acts as an arm of the state when performing a particular function. *Id.* Here, the relevant functions are the use of force, provision of medical care, and training, supervision, and discipline of subordinates.[3]

---

[3] Johnson brings excessive force and inadequate medical care claims under the Eighth and Fourteenth Amendments, but the Eighth Amendment protects convicted prisoners whereas the Fourteenth Amendment protects pretrial detainees. *See Piazza v. Jefferson Cty.*, 923 F.3d 947, 952 (11th Cir. 2019); *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). It is unclear if Johnson was a pretrial detainee or a convicted prisoner, but the Court finds that distinction does not matter for the purposes of ruling on the present motion to dismiss.

4

The Court finds that the Eleventh Amendment bars all of Johnson's official capacity claims.  First, the Eleventh Circuit has explained that Georgia sheriffs are entitled to Eleventh Amendment immunity for claims arising from their use of force policies in the operation of county jails.  *Manders*, 338 F.3d at 1328.  Next, the Court has previously considered "whether a Georgia sheriff acts as an arm of the State when providing medical care to county jail detainees."  *Palmer v. Correct Care Sols., LLC*, 291 F. Supp. 3d 1357, 1361 (M.D. Ga. 2017).  In light of *Lake v. Skelton*, 840 F.3d 1334 (11th Cir. 2016), the Court concluded that a sheriff and his commanding officer "acted as arms of the State in providing medical care to Muscogee County jail detainees."  *Palmer*, 291 F. Supp. 3d at 1366.  Therefore, the Eleventh Amendment bars Johnson's official capacity inadequate medical care claims.

Third, the Eleventh Amendment also bars Johnson's official capacity claims based on the Sheriff's failure to train, supervise, or discipline her subordinates.  The Eleventh Circuit has determined that Georgia sheriffs function as arms of the State when supervising, training, and disciplining subordinates to fulfill state functions.  *See Manders*, 338 F.3d at 1320-22, 1328 ("[O]nly the State possesses control over sheriffs' force policy and that control is direct and significant in many areas, including training and discipline."); *see also Palmer*, 291 F. Supp. 3d at 1364-65 (citing *Lake*, 840 F.3d at 1343) (noting that Georgia law

5

vests control over a sheriff's training and discipline of deputies with regard to providing medical care in a county jail). Accordingly, the Court grants Defendants' motion to dismiss Johnson's official capacity claims against Tompkins and Kiker.

B. Individual Capacity Claims Against Tompkins

Johnson also brings individual capacity claims against Tompkins. First, Johnson alleges that Tompkins committed constitutional violations in her supervisory capacity. To the extent that Johnson alleges that Tompkins is liable for her subordinates' conduct, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)). "Therefore, a plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id*.

Johnson does not allege that Tompkins personally participated in either the attack or subsequent medical treatment, so the Court must determine whether Johnson has established a sufficient causal connection between Tompkins's actions and the alleged

6

constitutional violations. "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so." *Id.* (quoting *Cottone*, 326 F.3d at 1360). "Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (alterations in original) (quoting *Cottone*, 326 F.3d at 1360).

Johnson makes no factual allegations about a widespread history of attacks, inadequate medical treatment, or any other kind of abuse. Nor does he allege any facts supporting an inference that Tompkins directed subordinates to attack Johnson or provide inadequate medical care or that she knew they would and failed to stop them. Johnson does, however, allege that Tompkins "failed to counsel, retrain or discipline" Kiker after Kiker used excessive force against him and that this failure constituted a policy, practice, and custom resulting in deliberate indifference to his constitutional rights. Compl. ¶ 33.

But, apart from those conclusory allegations, Johnson provides no other factual details about such customs or policies or how they resulted in deliberate indifference to constitutional

7

rights.[4]  *Id*. ¶ 31.  Such "purely conclusory allegations" are insufficient to state a supervisory liability claim under Federal Rule of Civil Procedure 8(a)(2).  *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (per curiam).  In *Franklin*, for example, the plaintiff repeatedly alleged that supervisory defendants were deliberately indifferent to the risk of an attack on an inmate in part by failing to implement or enforce policies to protect inmates.  *Id.* at 1251.  The Eleventh Circuit found such allegations insufficient to support a supervisory liability claim because the plaintiff had "merely recited an element of a claim without providing the facts from which one could draw such a conclusion."  *Id.*  The court explained that these kinds of conclusory allegations "carry no weight" under Federal Rule of Civil Procedure 8(a)(2) and *Iqbal/Twombly*.  *Id.*

As in *Franklin*, Johnson has merely recited elements without providing the necessary facts to support the conclusion that Tompkins had a policy or custom that resulted in deliberate indifference to his constitutional rights. He has not "describe[d] any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented" the attack or inadequate medical care.  *Id.*  His

---

[4] "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'"  *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (per curiam) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)).

conclusory allegations that Tompkins failed to supervise or discipline Kiker and that this failure constituted a policy or custom resulting in deliberate indifference to his constitutional rights do not satisfy *Iqbal/Twombly's* plausibility standard. *Id.; see Iqbal*, 556 U.S. at 678. Therefore, the Court dismisses Johnson's supervisory liability claims against Tompkins in her individual capacity.

As noted above, Johnson also alleges that Tompkins failed to train her subordinates. "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id.* (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "To establish that supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Id.*

9

at 1053 (alteration in original) (quoting *Connick*, 563 U.S. at 61).  Here, Johnson did not allege a pattern of constitutional violations that would have given Tompkins notice of the deficiency of her training program.  As such, Johnson's failure to train claim against Tompkins in her individual capacity is also dismissed.

## II. § 1983 Claims Against the Muscogee County Sheriff's Office

"Sheriff's departments and police departments are not usually considered legal entities subject to suit, . . . but 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'"  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (quoting Fed. R. Civ. P. 17(b)).  "The Georgia Supreme Court has explained that 'in every suit there must be a legal entity as the real plaintiff and the real defendant.  This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue.'"  *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (per curiam) (quoting *Ga. Insurers Insolvency Pool v. Elbert Cty.*, 368 S.E.2d 500, 502 (Ga. 1988)) (affirming district court's dismissal of Georgia county sheriff's department).  Here, the proper Defendant is Tompkins in her official capacity, and the Muscogee County Sheriff's Office's motion to dismiss is granted.

**III. § 1983 Claims Against CCG**

A local government, like CCG, is liable under § 1983 when its "official policy" causes a constitutional violation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff can therefore show that he suffered a constitutional violation caused by "(1) an officially promulgated [CCG] policy or (2) an unofficial custom or practice of [CCG] shown through the repeated acts of a final policymaker for [CCG]." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). The Eleventh Circuit has also explained that "a municipality can be held liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam)).

Johnson does not allege that CCG had an official policy that allowed jail officers to use excessive force or provide inadequate medical care. And, for CCG to be responsible for Tompkins's policies, practices, customs, or her adoption of Kiker's unconstitutional decision, Tompkins must have been acting as a *CCG* policymaker. *Grech*, 335 F.3d at 1347. Johnson, however, has not alleged a factual basis for concluding that Tompkins was the final policymaker for CCG with regard to use of force, medical care, or

11

training, supervising, and disciplining her subordinates. Instead, as discussed above, Tompkins is an arm of the State when establishing policies with regard to these functions. Johnson has thus failed to state a claim for municipal liability under § 1983, and the Court grants CCG's motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 12) is granted. The only claims that remain pending are those against Kiker in his individual capacity.

IT IS SO ORDERED, this 25th day of June, 2020

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA